IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2020 DEC 14 AM 11:05
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| CLINICOMP INTERNATIONAL, INC., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CIVIL NO. 1:18-CV-00425-LY |
| § | |
| ATHENAHEALTH, INC., § | |
| DEFENDANT. § | |
| § | |

### ORDER ON DEFENDANT ATHENAHEALTH, INC.'S MOTION TO EXCLUDE OPINIONS OF DR. NISHA M. MODY UNDER FED. R. EVID. 702

Before the court is the above styled and numbered patent-infringement action. Plaintiff CliniComp International, Inc. ("CliniComp") moves the court to exclude certain testimony of Defendant Athenahealth, Inc.'s damages expert Dr. Nisha M. Mody.[1]

Clinicomp alleges that Athenahealth infringes CliniComp's United States Patent No. 6,665,647, titled "Enterprise Healthcare Management System and Method of Using Same" (the "'647 Patent"). Clinicomp argues that Athenahealth infringes the '647 Patent by making, using, and offering to sell or selling "athenaOne," an integrated suite of cloud-based services combining practice management (athenaCollector), an Electronic Health Records ("EHR") system (athenaClinicals), and care coordination (athenaCommunicator) into a single packaged offering, starting when the '647 Patent was issued on December 16, 2003.

---

[1] Pending are Defendant Athenahealth, Inc.'s Motion to Exclude Opinions of Dr. Nisha M. Mody Under Fed. R. Evid. 702 filed on October 14, 2020 (Doc. No. 170) and [Corrected] CliniComp International Inc.'s Opposition to Athenahealth, Inc.'s Motion to Exclude Opinions of Dr. Nisha M. Mody filed on October 14, 2020 (Doc. No. 177).

Clinicomp retained and designated Mody as its expert witness regarding damages. Before the court is Mody's 95-page report (the "Report").[1] Mody is a member and co-founder of Eurekanomics LLC, a consulting firm specializing in litigation damages and financial valuation. In patent cases, Mody has analyzed numerous issues including damages, valuations, licensing practices, and commercial success. She has 20 years of experience analyzing and calculating economic damages and 6 years of expert-testifying experience. The Report sets forth her background, professional career, and certifications. Mody has testified as an expert many times in numerous federal courts.

Mody's damages model is based on a reasonable-royalty-rate analysis, which calculates the royalty the parties would have agreed to during a hypothetical negotiation that would have occurred on the eve of infringement. Her analysis multiplies the number of infringing customers by the cost to design around the claimed invention per customer to determine the amount of damages. Mody also performs a second calculation to check the reasonableness of her damages calculation. She refers to this as an "incremental-value" analysis. For the incremental-value analysis, Mody determines that Athenahealth estimated that the athenaOne suite would increase revenue by 10 percent. She then calculates the damages by multiplying 10 percent by the total revenue Athenahealth earned from the athenaOne suite.

**Expert testimony**

A witness qualified as an expert may testify if:

> the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; the testimony is based in sufficient facts or data; the testimony is the product of reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case.

---

[1] Mody's report, including exhibits, is sealed Exhibit 1 to Athenahealth's motion (Doc. No. 170).

FED. R. EVID. 702. Rule 702 was amended to incorporate the principles first articulated in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* FED. R. CIV. P. 702, Adv. Comm. Notes (2000). Following *Daubert* and its progeny, trial courts act as gatekeepers, overseeing the admission of scientific and nonscientific expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. In carrying out this task, district courts have broad latitude in weighing the reliability of expert testimony for admissibility. *See Kumho Tire Co.*, 526 U.S. at 152. The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

*Daubert* provides the analytical framework for determining whether expert testimony is admissible under Rule 702. *See Kumho Tire Co.*, 526 U.S. at 141. This *Daubert* framework includes many factors that can be used to determine the admissibility of expert testimony, including, but not limited to, whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *See Daubert*, 509 U.S. at 593-94. Not every *Daubert* factor will be applicable in every situation and a court has discretion to consider other factors it deems relevant. *See Kumho Tire*, 526 U.S. at 151-52.

Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or if the reasoning or methodology is not

sufficiently tied to the facts of the case. *Kumho Tire*, 526 U.S. at 150 (gate-keeping inquiry must be tied to particular facts of case); *i4i Ltd. v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) ("*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness"). The question of whether the expert is credible or the opinions are correct is generally a question for the fact-finder, not the court. *Apple Inc. v. Motorola, Inc.*, 757 Fed. Cir. 1286, 1314 (Fed. Cir. 2014), *overruled en banc on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### *Reasonable-royalty-rate analysis*

#### Extent of infringement

Athenahealth argues that Mody's damages calculation is speculative and should be excluded. Athenahealth contends that Mody should have calculated the damages based on the actual number of infringing customers instead of assuming every customer infringed. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009). The court disagrees and finds that Athenahealth draws the wrong conclusion from *Lucent Technologies*. In that case, the Federal Circuit reviewed whether the district court incorrectly denied judgment as a matter of law, not whether the damages expert was incorrectly allowed to testify. *Id.* at 1308. The parties "[did] not argue on appeal that any of the evidence . . . was improperly before the jury." *Id.* at 1325. Additionally, the Federal Circuit did not rule that the expert was required to analyze the number of times the product was used to infringe. *Id.* at 1333. Rather, the Federal Circuit stated only that "evidence of usage after infringement started *can* . . . be helpful to the jury and the court in assessing whether a royalty is reasonable," not that evidence of usage must be analyzed. *Id.* at

1333-34 (emphasis added). The Federal Circuit "never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence." *Id.* at 1334. Therefore, the court concludes that here, *Lucent Technologies* does not require the exclusion of Mody's testimony.

Moreover, Athenahealth argues that Mody's testimony is unsupported because it only relies on the testimony of another expert, CliniComp's technical expert Dr. Bryan Bergeron. The court disagrees. "Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014). Mody is a damages expert and may rely on the infringement analysis of the technical expert.

Athenahealth also argues that Mody's testimony regarding the extent of infringement would be prejudicial to the jury. However, the court concludes that the issue of how many customers used the product infringed may be addressed during cross-examination.

The court concludes that these arguments go to the evidentiary weight the fact-finder will give to this portion of Mody's report rather than the admissibility of the testimony. These issues may be addressed through cross examination. Mody's assumption that every customer infringes is sufficiently tied to the facts in this case, and the court declines to exclude Mody's opinions on this basis.

Non-infringing Alternatives

Athenahealth asserts that Mody incorrectly calculates the cost of implementing a non-infringing alternative (NIA). Athenahealth proffers three arguments to support this proposition. The court rejects all three arguments for the following reasons.

Athenahealth argues that Mody bases her cost of implementing a NIA on a higher cost NIA when two lower cost NIAs were available. Athenahealth provides a list of 10 NIAs to the patented technology. Mody determines that NIA 4 was the only feasible alternative provided and uses the cost of implementing that NIA in her analysis. However, Athenahealth argues that Mody ignores two lower-cost NIAs, NIA 5 and 8, because she incorrectly decides that they are not feasible.

Mody relied on Bergeron's opinion. Athenahealth argues that because Bergeron's opinions regarding these NIAs are unsupported, Mody's reliance on Bergeron's opinions is also unsupported and should be excluded. However, the Federal Circuit holds that "patent damages experts often rely on technical expertise outside of their field when evaluating design around options or valuing the importance of the specific, infringing features in a complex device." *Apple*, 757 F.3d at 1321 (citing *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008)).

The court concludes that these arguments go to the evidentiary weight the fact-finder will give to this portion of Mody's report rather than the admissibility of the testimony. This issue may be addressed through cross-examination. Mody's assumption that NIA 4 is the only feasible NIA is sufficiently tied to the facts in this case, and the court declines to exclude Mody's opinions on this basis.

Athenahealth also argues that Mody incorrectly assumes that NIA 4 would require each customer to have its own server instead of recognizing that multiple customers can share one server.

Mody again relies on Bergeron's opinion. Athenahealth argues that Bergeron stated in his deposition that he did not have an opinion regarding whether each customer would require an individual server under NIA 4. However, CliniComp disagrees and argues that Bergeron stated in

his deposition and that it was his expert opinion that NIA 4 would only be viable if Athenahealth had a server supporting each customer.

The court concludes that these arguments go to the evidentiary weight the fact-finder will give to this portion of Mody's report rather than the admissibility of the testimony. This issue may be addressed through cross-examination. Mody's assumption that Athenahealth would need one server per customer for NIA 4 is sufficiently tied to the facts in this case, and the court declines to exclude Mody's opinions on this basis.

Athenahealth also argues that Mody incorrectly assumes that Athenahealth would purchase a per-year license of Oracle's software for each server. Athenahealth points to three agreements with Oracle, the earliest of which was effective starting in 2011. Athenahealth argues that it paid a flat fee for an unlimited number of perpetual licenses in these agreements. Thus, Athenahealth argues that Mody's analysis is not based on sufficient facts because she does not take these agreements into account when conducting her analysis. However, CliniComp argues that these agreements would not have been available during the hypothetical negotiation that would have taken place in 2003 and, even if applicable, the agreements do not mirror Athenahealth's argument.

The court concludes that these arguments go to the evidentiary weight the fact-finder will give to this portion of Mody's report rather than the admissibility of the testimony. This issue may be addressed through cross-examination. Mody's assumption that Athenahealth would need to purchase a per-year license for each server is sufficiently tied to the facts in this case, and the court declines to exclude Mody's opinions on this basis.

*Incremental-value analysis*

To check the reasonableness of her analysis, Mody performs an incremental-value analysis. For this analysis, Mody multiplies the total revenue from the accused products by 10 percent to

calculate the incremental value to Athenahealth of using the patented invention. Athena argues that Mody's incremental-value analysis is methodologically unsound because it is based on an arbitrary apportionment, the 10-percent apportionment is not tied to sufficient facts, and the analysis does not appropriately account for the value to Athenahealth of using the claimed invention. The court agrees.

Mody's 10-percent apportionment is derived from an analyst report from 2008, approximately five years after infringement began. That report provides, "physicians optimize revenue collections and operational/clinical workflows. The company has a track record of delivering tangible financial results to clients, including an average 10% improvement in annual collections." Mody opines that this 10-percent improvement in annual collections would result in a 10 percent increase in revenue for Athenahealth's customers. Mody, relying on Bergeron's opinions, concludes that data analytics drives demand for the athenaOne suite, and she assumes that the entire 10-percent increase in revenue for Athenahealth's customers would be due to data analytics. Mody, relying on Bergeron and Dr. Dean Sittig's opinions, concludes that the claimed invention is the "source" of the data analytics employed by Athenahealth. *Id.* Mody then assumes that the entire 10 percent increase in revenue is tied to infringement. *Id.* However, Mody's vague reference to data analytics is not tied to any infringing feature, and none of the evidence Mody cites sufficiently supports her assumptions.

Moreover, Mody assumes that a 10-percent increase in revenue for Athenahealth's customers leads to the conclusion that Athenahealth would also experience a corresponding 10-percent increase in revenue. Mody multiplies by 10 percent the total revenue from Athenahealth's entire suite of products to get the approximate damages under her incremental-value analysis. The court finds that Mody does not sufficiently support her assumption that Athenahealth's revenue

would also increase by 10 percent. Mody relies on marketing materials and Athenahealth's website to show that Athenahealth promises its athenaOne suite will improve certain metrics for its customers. However, the court finds this insufficient to show that Athenahealth would also have a 10-percent increase in revenue. Mody's report reflects that Athenahealth's pricing is not transparent and varies with each customer. So, lacking is support for the assumption that the 10-percent apportionment is directly tied to such an increase in revenue due to the athenaOne suite. The court concludes that Mody's incremental-value analysis is not sufficiently tied to the facts of the case. Therefore, the court will exclude Mody's opinions in this regard.

**Conclusion**

The court's role as a gatekeeper is not intended to supplant the adversary system in which vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof are means of attacking shaky but admissible evidence. *See Daubert*, 509 U.S. at 596.

In focusing on whether Mody's opinions should be admitted, and not the content of her opinions, the court concludes that Mody's opinions regarding her reasonable-royalty-rate analysis is based on data that is sufficiently tied to the facts. Further, the court concludes that during trial proceedings, Mody's testimony in this regard will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702. However, the court concludes that Mody's testimony regarding the incremental-value analysis is not sufficiently tied to the facts and will not assist the trier of fact. *See id.* Mody's opinions regarding the incremental-value analysis will be excluded. Having considered the motion, and response, case file, and applicable law,

**IT IS ORDERED** that Defendant Athenahealth, Inc.'s Motion to Exclude Opinions of Dr. Nisha M. Mody Under Fed. R. Evid. 702 filed October 14, 2020 (Doc. No. 170) is **GRANTED**

**IN PART** and to the extent that Mody may not testify regarding her incremental-value analysis for calculating damages. In all other respects Athenahealth's motion is **DENIED**.

SIGNED this \_\_\_14th\_\_\_ day of December, 2020.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE